IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LOUVENIA JACKSON, )
)
                Plaintiff, )
) CIVIL ACTION
v. )
) No. 12-2031-JWL
CAROLYN W. COLVIN,[1] )
Acting Commissioner of Social Security, )
)
                Defendant. )
_____ )

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability(SSD) benefits and widow's insurance benefits under sections 202(e), 216(i), and 223 of the Social Security Act. 42 U.S.C. §§ 402(e), 416(i), and 423 (hereinafter the Act). Finding error in the Commissioner's evaluation of Dr. Sand's medical opinion, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

**I.     Background**

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and widow's insurance benefits, alleging disability beginning August 8, 2007. (R. 13, 223-24, 229-30). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She alleges the Administrative Law Judge (ALJ) erred by failing to consider the combined effects of all of her medically determinable impairments in assessing residual functional capacity (RFC); erroneously evaluated the medical opinion of a non-treating physician, Dr. Sand; and improperly discounted the credibility of Plaintiff's allegations of symptoms.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ erred in weighing the medical opinion of Dr. Sand. Plaintiff may make her other arguments to the Commissioner on remand, and the court will not address them here.

## II.  Evaluation of Dr. Sand's Medical Opinion

Plaintiff argues that the ALJ cited Dr. Sand's report with approval but ignored the functional restrictions found by Dr. Sand. She specifically argues that "whereas the ALJ found that Jackson 'must avoid pushing and pulling with the non-dominant left upper extremity and reaching or working above chest level' Dr. Sands [sic] found that Jackson 'could only occasionally reach in all directions with either her left or right hand.'" (Pl. Br. 19). The Commissioner argues that "the ALJ explicitly discussed Dr. Sand's opinion and explained how it supported the RFC." (Comm'r Br. 13). She does not address the inconsistency between the reaching limitation assessed by the ALJ and the reaching limitations opined by Dr. Sand, but points out Plaintiff's mischaracterization of reaching limitations as restrictions in manual dexterity, and further argues that "the ALJ is not

4

obligated to adopt Dr. Sand's opinion in every detail." Id. at 14 (citing Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011)).

Medical opinions may not be ignored, and unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2013). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

SSR 96-8p includes narrative discussion requirements for an RFC assessment. West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2013). The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. Id.

5

The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Id. It must include consideration of medical opinions regarding plaintiff's capabilities, and if the ALJ's RFC assessment conflicts with a medical opinion, the ALJ must explain why he did not adopt the opinion. Id. at 149-50.

In the decision, the ALJ noted that Dr. Levine, the medical expert who testified at the ALJ hearing, had recommended additional medical testing, that Plaintiff was subsequently sent to Dr. Sand for a neurological examination with an electromyogram (EMG) and a nerve conduction velocity study (NCVS), and that thereafter an examination report was prepared by Dr. Sand and admitted into the record. (R. 13). At three points in the decision, in approving (and virtually identical) language, the ALJ summarized Dr. Sand's findings, noting limited shoulder range of motion; diffuse breakaway weakness; no mention of disuse atrophy of either upper extremity; normal reflexes, normal sensory examination, and normal rapid alternating movements; and testing limited by pain behaviors, but suggesting only "a long standing and inactive right C8 radiculopathy without other abnormality." (R. 18, 19). Thereafter, the ALJ discussed Dr. Sand's opinion: "In May 2011, Dr. Sand opined that the claimant had no problems performing the walking, standing, or sitting of light work, but did limit lifting/carrying to 10 pounds occasionally. The only other significant restriction was [ ] to overhead reaching." (R. 21).

In his RFC assessment, the ALJ found that Plaintiff "can lift/carry up to 10 pounds, but not above chest level," and that she "must avoid pushing and pulling with the non-dominant left upper extremity and reaching or working above chest level." (R. 17). As relevant here, Dr. Sand, in fact, opined that Plaintiff can never reach overhead with either hand, and that all other reaching with either hand was limited to "[o]ccasionally (up to 1/3)." (R. 664). Thus, Dr. Sand opined that Plaintiff cannot reach, even at or below chest level, for more than one-third of a workday, whereas the RFC assessed by the ALJ assumes that so long as Plaintiff never reaches above chest level, she may reach at or below chest level for more than two-thirds of the time. Contrary to the ALJ's finding, this is a significant restriction in Plaintiff's capabilities beyond the restriction from overhead reaching.

Plaintiff believes that Dr. Sand's limitations to lifting no more than 10 pounds and reaching no more than one-third of a workday "would prevent the claimant from performing her past relevant work and [because she is over 50 years old] she would be entitled to benefits under the appropriate Grid Rule," and she told the ALJ as much. See (R. 352) (Plaintiff's response to the ALJ's intent to admit Dr. Sand's report). Moreover, because Plaintiff is over fifty years of age, if she is limited to sedentary work as the ALJ assessed, is unable to perform her past relevant work as she alleges, and has no skills transferable to other work (a possibility which has not yet been considered), she would likely be found disabled. 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00(g). Nevertheless, the ALJ did not explain why he effectively rejected Dr. Sand's opinion that Plaintiff

7

cannot reach more than one-third of a workday, and he did not even acknowledge Dr. Sand's opinion in that respect.

As the Commissioner argues, the ALJ was not required to adopt Dr. Sand's opinion in every detail. However, as the court's discussion of SSR 96-8p above reveals, the ALJ must explain why he did not adopt a medical opinion which conflicts with the RFC he assessed, and he must explain how ambiguities and material inconsistencies in the evidence were considered and resolved. He did not do so here, and that failure requires remand for Dr. Sand's opinion to be considered properly.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

Dated this 18th day of November 2013, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**